Nathaniel SIMS, Appellant,

v.

**DISTRICT OF COLUMBIA, et al., Appellees.**

No. 86–368.

District of Columbia Court of Appeals.

Argued June 25, 1987.

Decided Sept. 25, 1987.

Sheldon I. Cohen, Washington, D.C., for appellant.

Edward E. Schwab, Asst. Corp. Counsel, with whom James R. Murphy, Acting Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellees.

Before FERREN, TERRY and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

The dispute in this case turns on who holds ultimate authority over personnel matters relating to the Educational Institution Licensure Commission (EILC). Appellees' position is that such authority rests with the Mayor, while appellant Sims as-

serts that such authority rests with the EILC itself. The trial court granted summary judgment for the appellees; we affirm.

## I.

The facts relevant to the issue at hand are essentially undisputed. Sims was appointed to the position of executive director of the EILC in December 1980. The personnel action form which effected this appointment was signed not only by the chairman of the EILC, but also by a representative of the Mayor who signed as the approving officer. Subsequently, a personnel action was taken to upgrade Sims's position as of December 14, 1983. The relevant form was signed by the chairman of the EILC as the approving officer. In May 1985, a personnel action form was issued nullifying the promotion, since "authority to approve such action rests with the City Administrator [as the Mayor's delegate] rather than the Chairman, EILC." Sims then brought this suit to enjoin the appellees from cancelling the promotion and from seeking to recoup the salary overpayments.

## II.

The EILC was created in 1976 to regulate private educational institutions in the District of Columbia, as the successor to the District of Columbia Board of Higher Education. D.C. Code §§ 31–1601 et seq. (1981). Included in the act establishing the EILC was a provision dealing with personnel, as follows:

> (b) The Commission may appoint such personnel as it deems necessary. Compensation shall be fixed in accordance with the merit promotion system of the Federal Civil Service Commission, established under sections 5335 and 5336 of title 5 of the United States Code, within the limits of funds available to the Commission, except that such positions shall be excepted.[1]

The controlling question in this case is whether this authority in the EILC to appoint (and hence to promote) its personnel survived the passage of the Comprehensive Merit Personnel Act (CMPA), enacted two years after the establishment of the EILC, effective March 3, 1979. We hold that it did not.

### A.

Under the District of Columbia Self-Government Act, D.C. Code §§ 1–601.1 et seq (1987 Repl.), amongst the powers and authority thereby delegated, the District government was given the mandate to develop its own comprehensive personnel system to replace the federal system which then controlled. Under this mandate, the D.C. Council, after lengthy and involved proceedings, passed the CMPA, which became law on March 3, 1979. See American Federation of Gov't Employees v. Barry, 459 A.2d 1045, 1048 (D.C.1983).

In enacting the CMPA, the D.C. Council found, among other things, that (§ 1–601.-1(3)):

> The present authority for filling positions within the District of Columbia government is fragmented, both between the United States Civil Service Commission and the District of Columbia government, and among various subdivisions of the District government, such as the District of Columbia Board of Education, the Trustees of the University of the District of Columbia, and other independent boards and commissions.

Hence, it declared as one of the purposes of the CMPA to "create uniform systems for personnel administration among the executive departments and agencies reporting directly to the Mayor of the District of Columbia and among independent agencies, boards and commissions in the District of Columbia government." (§ 1–601.2(a)(2)). The comprehensive nature of the legislation was further emphasized by the section on coverage, which provided that "unless specifically exempted from certain provi-

---

1. D.C. Law 1–104, § 5(b), 23 D.C. Reg. 8734 (1977). The subsection was amended by the Comprehensive Merit Personnel Act (CMPA) in 1979 to substitute a reference to the CMPA for the reference to the federal merit promotion system. It now appears in amended form as D.C. Code § 31–1605(b) (1987 Repl.). See discussion infra.

sions, this chapter [the CMPA] shall apply to all employees of the District of Columbia government, except [the local judiciary and their personnel]." (§ 1–602.1) And finally, so that there might be no doubt on the matter, the CMPA provided (§ 1–633.5(b)):

Any law, rule and regulation, Commissioner's Order, Mayor's Order, Mayor's Memorandum or any administrative rule and regulation which is inconsistent with or contrary to the provisions of this chapter is repealed or superseded to the extent of such inconsistency on or after the effective date of this chapter.

The carrying out of the personnel management systems established by the CMPA and the rules and regulations thereunder was to be undertaken by the appropriate "personnel authority." (§§ 1–603.-1(14), 1–604.6(a)). The crucial subsection for this case is the designation of the "appropriate personnel authority" contained in § 1.604.6(b). That subsection provides that "the personnel authority for District of Columbia government [sic ] means the Mayor for all employees, except as provided in § 1–602.3 and as follows." Some fourteen agencies are then specifically named with a designated "personnel authority" other than the Mayor. The EILC is not named either in § 1–602.3 or in the exceptions listed in § 1–604.6(b). Hence, by the terms of the CMPA standing alone, the "personnel authority" for the EILC is the Mayor.

### B.

Notwithstanding the foregoing analysis, Sims argues that the independent personnel authority of the EILC, which he finds in D.C. Code § 31–1605(b), quoted *supra,* survived the enactment of the CMPA. He draws our attention to several points.

1. First, he invokes the principle that whenever possible, two statutes in apparent conflict ought to be harmonized. Since the CMPA did not expressly repeal § 31–1605(b), he would have us hold that it should be deemed to have survived the enactment of the CMPA. This would not only contradict the plain words of the CMPA but also would substantially defeat

the stated purpose of the CMPA to reduce the then existing fragmentation of personnel authority. We cannot think that such was the intent of the District of Columbia Council in enacting the CMPA. The CMPA itself plainly contemplated that preexisting law might be "repealed or superseded" by its provisions. D.C. Code § 1–633.5(b), quoted *supra.*

2. Second, he invokes two portions of the CMPA itself as reflecting an intent that the EILC's personnel authority was to survive the passage of the CMPA.

a) In § 3205(y) of the CMPA, 25 D.C. Reg. 6066 (1978), three sections of the act establishing the EILC were amended to eliminate references to the superseded federal civil service laws. One of the sections so amended was § 31–1605(b), which authorized the EILC to "appoint such personnel as it deems necessary." Sims argues that by failing to eliminate the section in its entirety, the District of Columbia Council thus recognized the continuing authority of the EILC over its personnel. We think this makes too much of boilerplate. Section 3205 consists of sixty-two separate sections, in the main striking references to the federal laws and substituting references to the CMPA. Such a provision, essentially housekeeping in nature, cannot override contrary language basic to the statutory scheme of the CMPA.

b) Sims also points to the definitional section of the CMPA, which distinguishes between "subordinate" and "independent" agencies. Section 1–603.1(17) defines a subordinate agency as one under the direct administrative control of the Mayor, "including the following on the date of adoption of this chapter." Thirty-two agencies are there listed, not including the EILC. Therefore, Sims asserts, EILC falls within the definition of "independent agency" in § 1–603.1(13). That subsection lists certain independent agencies but not the EILC. However, the list does not purport to be all-inclusive. Sims's argument, in essence, is that it is inconsistent with the status of an independent agency for its personnel

authority to be the Mayor.[2] The CMPA, however, does not reflect such a purist philosophy. Section 1–604.6, dealing with personnel authority, nowhere distinguishes between independent and subordinate agencies as such, and indeed, one of the independent agencies listed, the Zoning Commission, is not established as a separate personnel authority.

As a variant to the foregoing argument, Sims cites us to seven agencies in the District of Columbia, not listed as separate "personnel authorities" in § 1–604.6, which are said to have independent statutory authority relating to personnel matters. Three of these were created after the passage of the CMPA on November 22, 1978; we need not explore the interrelation of such subsequent enactments upon the provisions of the preexisting CMPA. A fourth, the Housing Finance Agency (HFA), was signed into law three weeks before the CMPA, and had the same effective date as the CMPA. The HFA, however, was explicitly designated as a "corporate body which has a legal existence separate from the government of the District." D.C. Code § 45–2111 (1968 Repl.).

The remaining three, all in existence at the time of the passage of the CMPA, are related to the courts. One indeed was the District of Columbia Courts as such, of which the judges and their nonjudicial personnel were specifically exempted from the CMPA by its own terms. § 1–602.1. A second was the Pretrial Service Agency, which was not listed among the "boards and commissions" subject to the CMPA in the original version of § 1–603.1(2), *see* 25 D.C. Reg. 5765 (1978), and was apparently unaffected by the CMPA in any event pursuant to the exclusion in that section of "those [boards and commissions] associated with the judiciary." The third was the "Board of Trustees of the District of Columbia Public Defender Service," which was in fact included in the original listing. However, the act establishing the Public Defender Service contains expansive provisions relating to personnel going far be-

yond the single sentence in the EILC legislation relied upon by Sims, D.C. Code § 1–2705 (1987 Repl.). The Board of Trustees itself is appointed by a panel consisting of three judges plus the Mayor. § 1–2703(b). In any event, the decision in this case cannot turn on the possibility, on which we express no opinion, that one or another agency's power over personnel may for reasons particular to that agency have survived the inclusive sweep of the CMPA. We can discern no such intent to exclude the EILC.

Accordingly, the judgment of the trial court granting summary judgment for the appellees is

*Affirmed.*

**2.** Whether EILC is in fact an "independent agency" at least for purposes of the CMPA, we need not here determine. A potential problem with

its categorization as such is whether the Mayor may allot an excepted service position to EILC. D.C.Code § 1–60.3(a)(3) (1987 Repl.).