PUBLIC DEFENDER SERVICE of the District of Columbia, Appellant,

v.

Julia Chambers SAINT– PREUX, Appellee.

No. 96–CV–41.

District of Columbia Court of Appeals.

Argued March 12, 1997.
Decided April 3, 1997.

Warren Anthony Fitch, Washington, DC, for appellant.

Julia R. Chambers Saint–Preux, pro se.

Before FERREN, TERRY, and FARRELL, Associate Judges.

---

PER CURIAM:

This appeal is from a decision of the Superior Court affirming an order of the Office of Employee Appeals (OEA) in a personnel action brought by appellee, a non-attorney former employee of appellant Public Defender Service (PDS). The single issue presented, a legal one, is whether PDS non-attorney employees are covered by the Comprehensive Merit Personnel Act (CMPA or the Act), D.C.Code §§ 1–601.1 *et seq.* (1992).[1] Both an Administrative Judge of OEA and OEA itself, in thoughtful opinions, concluded that the CMPA reveals no legislative intent to exclude PDS non-attorney employees from the reach of the Act. On appeal to the Superior Court, D.C.Code § 1–606.3(d), that court affirmed in a similarly well-reasoned opinion.

■ Our standard of review is the same as that applied by the Superior Court. *See Public Employee Relations Bd. v. Washington Teachers' Union Local 6,* 556 A.2d 206, 207 (D.C.1989). This court "defer[s] to an agency's interpretation of a statute it administers unless that interpretation is unreasonable in light of the prevailing law, inconsistent with the statute, or plainly erroneous." *Davis v. University of the District of Columbia,* 603 A.2d 849, 851 (D.C.1992). *See also Office of the District of Columbia Controller v. Frost,* 638 A.2d 657, 666 (D.C.1994). "This includes situations where there is a significant dispute over the coverage of the relevant statute...." *Taggart–Wilson v. District of Columbia,* 675 A.2d 28, 29 (D.C.1996). *See Frost, supra,* 638 A.2d at 666 (deferring to OEA's holding that Public Employee Relations Board has jurisdiction over claims of retaliation).

■ We hold that OEA's interpretation of the CMPA as covering PDS non-attorney employees is reasonable and consistent with both the statutory language and the legislative purpose. The intent of the CMPA, as we have pointed out before, *Sims v. District*

*of Columbia,* 531 A.2d 648, 649–50 (D.C. 1987), was in part to overcome the previous "fragment[ation]" of authority for filling positions within the District of Columbia government, § 1–601.1(3), by "creat[ing] uniform systems for personnel administration among the executive departments and agencies reporting directly to the Mayor of the District of Columbia *and* among independent agencies, boards and commissions in the District of Columbia government." *Id.* § 1–601.2(a)(2) (emphasis added). Accordingly, the CMPA declares in § 1–602.1, as relevant here:

> (a) Except as provided in subsection (b) of this section or unless specifically exempted from certain provisions, this chapter shall apply to all employees of the District of Columbia government, except the Chief Judges and Associate Judges of the Superior Court of the District of Columbia and the District of Columbia Court of Appeals and the nonjudicial personnel of said Courts.

Subsection (b) states that "[t]he Mayor may enter into an agreement with the District of Columbia court system or with any independent agency of the District to provide to their employees any or all of the benefits established under the [CMPA]." An "independent agency" includes, among many other entities, "the Superior Court of the District of Columbia[ ] and the District of Columbia Court of Appeals." Section 1–603.1(13). PDS, while viewing itself as neither an agency under the personnel authority of the Mayor nor an independent agency, nonetheless analogizes its non-attorney employees to the "nonjudicial personnel" of the District of Columbia court system, who are exempt from coverage by the Act.[2]

While OEA recognized the close association between PDS and the judiciary, its refusal to read the phrase "nonjudicial personnel of [the] Courts" broadly enough to

1. The case does not concern the status of PDS attorneys. *See* D.C.Code § 1–610.9.

2. PDS points out, for example, that judges make up the majority of the panel that appoints PDS's Board of Trustees, D.C.Code § 1–2703(b)(1) (1992); that PDS's primary function is to take appointments for representation of indigent

clients, *id.* § 1–2702; that it is required to report to and consult with the court on a regular basis; and that its operating funds derive from appropriations for the judiciary and are disbursed by the Administrative Office of the United States Courts. § 1–2707.

include PDS employees is neither plainly wrong nor unreasonable. OEA found in the history of the CMPA—which, as proposed, would have excepted only the judges from coverage, and was expanded at the behest partly of the then-Chief Judge of this court[3]—a legislative intent that the exception be read narrowly. Moreover, as the Superior Court pointed out, the term "nonjudicial personnel" is used elsewhere in the Code in reference to the administration of the courts, e.g., D.C.Code § 11–1725 (1995) ("Appointment of nonjudicial personnel"), and refers there to personnel employed directly by the courts such as the Director of Social Services, the clerks of the courts, and the Auditor–Master. PDS likens itself to the Pretrial Services Agency (PSA), see D.C.Code § 23–1301 (1996), and cites to a 1979 memorandum by an Acting Deputy Corporation Counsel expressing the view that the PSA is excluded from coverage under the CMPA. Without deciding what interpretive weight should be given such memoranda, we agree with OEA that the analogy to the PSA is flawed. As the Administrative Judge noted, the PSA was not listed among the "boards and commissions" subject to the CMPA in the original version of the statute, see Sims, 531 A.2d at 651 (pointing out this fact), but the Board of Trustees of PDS was.[4] In any event, whatever the status of the PSA for purposes of CMPA coverage (an issue not before us), we think it evident that the PSA more closely approximates an arm of the judiciary than does PDS, whose primary responsibility and loyalty is to the persons it is authorized by statute to represent. Compare § 1–2702 (describing duties of PDS) with § 23–1303(h) (enumerating the PSA's functions).

It is true, as we pointed out in dictum in Sims, supra, that the act establishing PDS "contains expansive provisions relating to personnel going far beyond the single sentence" in the legislation that created the agency whose status was at issue in Sims (the Educational Institutional Licensure Commission). 531 A.2d at 651. But, as OEA concluded, PDS' personnel authority may be given full recognition where not inconsistent with the protections afforded its personnel by the CMPA, since the CMPA's repealer clause affects only "[a]ny law ... inconsistent with or contrary to the provisions of this chapter...." Section 1–633.5(b). As the Administrative Judge pointed out, "[t]here are many independent personnel authorities" in the D.C. government, but these "are usually required to implement the CMPA for their employees"—as witness § 1–604.6, listing the "personnel authority" for various independent agencies charged with "[t]he implementation of the rules and regulations" issued under the Act.

\* \* \* \* \* \*

PDS contends, in any event, that "the process by which PDS reviewed respondent's performance, notified her of the charges against her, afforded her an opportunity to respond, and provided her with a detailed written decision explaining the reasons for her termination complied in all respects with the four-step process specified in CMPA § 1–617.3(a)(1)(A)(D)." Apparently to permit PDS to make this argument before the OEA, the trial court "remanded to the [OEA] for further action consistent with [the trial court's] Order." We agree with that disposition. The Administrative Judge was of the view that PDS had "admitted[ ] not comply[ing] with subchapter XVII of the CMPA in taking this action [i.e., in terminating appellee]." But the character of any such "admission" by PDS (which does not appear in the record) is unclear: PDS may simply have been admitting—consistent with its jurisdictional argument—that it had not proceeded under the aegis of the CMPA, while insisting

---

**3.** COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT OF THE COMMITTEE ON GOVERNMENT OPERATIONS ON BILL 2–10 (LAW 2–139), THE DISTRICT OF COLUMBIA GOVERNMENT COMPREHENSIVE MERIT PERSONNEL ACT OF 1978 (July 5, 1978).

**4.** D.C. Law 2–139, § 301(b), 25 D.C.Reg. 5740, 5767 (1978). The Administrative Judge pointed out that shortly after enactment of § 301 "the section was amended to provide a definition for 'boards and commissions' by functions performed rather than by listing them individually.... There is nothing in the legislative history of the amendment that suggests that any board previously listed was exempted by replacing the language."

that the process it accorded appellee was functionally identical to the CMPA's procedures. For this reason, we think PDS must be allowed to argue its *de facto* compliance with the CMPA in further proceedings before the OEA; and appellee, of course, may dispute that contention.[5]

The judgment of the Superior Court is *Affirmed.*

**5.** The Administrative Judge's observation that "[t]here is some question whether [PDS] can lawfully initiate this [personnel] action since more than forty-five days have passed since the conduct giving rise to the charges" rested upon the assumption that PDS had admitted noncompliance with the CMPA (so that at *this* point it might be precluded from initiating termination for the same misconduct). As pointed out, however, it is not clear that PDS was "admitting" noncompliance with the CMPA's procedures rather than simply acknowledging that its—functionally identical—procedures were the basis for the termination.