*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CV-752

BOARD OF TRUSTEES OF THE UNIVERSITY OF THE
DISTRICT OF COLUMBIA, APPELLANT,

v.

THE JOINT REVIEW COMMITTEE ON EDUCATION IN
RADIOLOGIC TECHNOLOGY, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-3793-12)

(Hon. Michael L. Rankin, Trial Judge)

(Argued February 26, 2015      Decided May 21, 2015)

*Daniel D. Mauler*, with whom *Yoora Pak* and *Smruti Radkar* were on the brief, for appellant.

*Michael A. Montgomery*, of the bar of the State of Virginia, *pro hac vice*, by special leave of court, with whom *Edward J. Longosz, II*, and *Sarah Shyr* were on the brief, for appellee.

Before GLICKMAN and FISHER, *Associate Judges*, and STEADMAN, *Senior Judge*.

STEADMAN, *Senior Judge*: After offering courses in radiology for almost forty years, the University of the District of Columbia ("UDC") lost its accreditation in that field by action of the Joint Review Committee on Education in

Radiologic Technology ("JRCERT"). The issue in this appeal by UDC is whether, as the trial court held, exclusive jurisdiction over its dispute with JRCERT is vested in the federal courts. We hold that it is and therefore affirm the trial court's dismissal of UDC's third-party complaint against JRCERT for lack of jurisdiction.

## I.

JRCERT is the only agency recognized by the U.S. Department of Education and the Council for Higher Education Excellence to accredit programs in radiography, radiation therapy, magnetic resonance, and medical dosimetry. Only students who graduate from a program while it is certified by JRCERT are considered graduates of a JRCERT accredited program. Students who fail to graduate from a JRCERT accredited program cannot sit for the national board certification examination.

JRCERT continuously accredited UDC's Medical Radiography Program ("the Program") from 1971 to April 23, 2010. On that date, JRCERT's Board of Directors voted to involuntarily withdraw the Program's accreditation, effective April 23, 2010. UDC did not seek re-accreditation.

Two years later, on May 2, 2012, Ahmednur Fella, a student at UDC who had graduated from the Program on May 8, 2010, filed a lawsuit against UDC alleging breach of contract, fraud, and negligent misrepresentation arising from the revocation of accreditation. UDC then filed a third-party complaint against JRCERT under Rule 14 of the Superior Court Rules of Civil Procedure, alleging a wide variety of state law claims.[1] The trial court granted JRCERT's motion to dismiss the third-party complaint on the ground that 20 U.S.C. § 1099b (f) (2012), a provision of the Higher Education Act of 1965 ("HEA"), as amended, conferred exclusive jurisdiction over the dispute in the federal courts.[2] We turn to that issue.

---

[1] These included breach of contract, breach of implied contract, tortious interference with economic relationships, negligence, breach of fiduciary duty, promissory estoppel, intentional misrepresentation, negligent representation, contribution from JRCERT, and equitable indemnification from JRCERT.

[2] In doing so, the trial court relied on a prior Superior Court opinion in another suit by a UDC student in the Program. *Berhanu Worku v. Board of Trs. of the Univ. of the District of Columbia ("Worku")*, No. 2013 CA 002822 B, Order (D.C. Super. Ct. Nov. 7, 2013). UDC objects to the trial court's reliance on the prior court's opinion without considering its subsequent arguments, but we review judgments, not opinions. *District Intown Props., Ltd. v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 680 A.2d 1373, 1377 n.5 (D.C. 1996). Plaintiff Fella and UDC settled their dispute and the underlying case was dismissed, leaving only the dispute over the third-party complaint. The issue of exclusive jurisdiction *vel non*, however, remains relevant to several other similar cases still pending in Superior Court.

## II.

The disputed provision relating to the issue of exclusive jurisdiction came into being as part of the 1992 amendments to the Higher Education Act of 1965 and reads as follows (20 U.S.C. § 1099b (f)):

> Notwithstanding any other provision of law, any civil action brought by an institution of higher education seeking accreditation from, or accredited by, an accrediting agency or association recognized by the Secretary for the purpose of this subchapter and part C of subchapter I of chapter 34 of Title 42 and involving the denial, withdrawal, or termination of accreditation of the institution of higher education, shall be brought in the appropriate United States district court.

We address the interpretation of this provision against the backdrop of the principle that "state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). "This deeply rooted presumption in favor of concurrent state court jurisdiction is, of course, rebutted if Congress affirmatively ousts the state courts of jurisdiction over a particular federal claim." *Id.* at 459. Congress can oust a state court of concurrent jurisdiction either explicitly or implicitly. "[T]he presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from

legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Id*. at 459-60 (quoting *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 (1981)).[3] Following the Supreme Court's lead, we now proceed to examine whether exclusive jurisdiction in the federal courts is found either by "an explicit statutory directive" or by "unmistakable implication from legislative history." As will be shown, we believe both inquiries lead to the conclusion of exclusivity.[4]

### A.

We first examine the "explicit statutory directive." On its face, it appears to be an instruction in seemingly unequivocal terms. "Notwithstanding any other provision of law," a covered civil action "shall"—not "may"—be brought in the appropriate United States District Court. 20 U.S.C. § 1099b (f). Appellant, however, points out that the statute does not employ the words "exclusively" or "only" and draws our attention to federal cases that have interpreted somewhat

---

[3] We proceed under the assumption, with which we see no reason to quarrel, that for present purposes, the District of Columbia courts are to be treated as those of a state.

[4] We therefore need not consider the third possibility that may show exclusive jurisdiction as a result of "a clear incompatibility between state-court jurisdiction and federal interests."

comparable language as not to exclude state court jurisdiction. *See, e.g.*, *Tafflin*, *supra*, 493 U.S. at 461 (finding that the RICO statute did not confer exclusive federal court jurisdiction: "Any person injured . . . *may* sue therefor in any appropriate United States district court . . . ."); *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990) (finding that Title VII of the Civil Rights Act did not confer exclusive federal court jurisdiction: "[e]ach United States district court . . . shall have jurisdiction of actions brought under this chapter."). But the statute before us does not simply say that a federal court has jurisdiction or that a person injured may sue. On the contrary, it explicitly directs that a particular type of action "shall" be brought in a specified federal court. Moreover, it emphasizes that such is to be the case "notwithstanding any other provision of law."

Another canon of statutory interpretation is to read "individual words of a statute . . . in the light of the statute taken as a whole." *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 171 (D.C. 2008) (internal quotation marks omitted). "[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (internal quotation marks omitted).

Congress, in two other provisions of the HEA, explicitly granted concurrent jurisdiction to state and federal courts:

> In the performance of, and with respect to, the functions vested in the Secretary by this part, the Secretary--
>
> . . .
>
> (5) *may sue and be sued in any court of record of a State having general jurisdiction or in any district court of the United States*, and such district courts shall have jurisdiction of civil actions arising under this part without regard to the amount in controversy, and any action instituted under this part without regard to the amount in controversy, and any action instituted under this section by or against the Secretary shall survive notwithstanding any change in the person occupying the office of the Secretary or any vacancy in such office . . . .

20 U.S.C. § 1066d, (5) (2012) (emphasis added).

> (a) General powers
>
> In the performance of, and with respect to, the functions, powers, and duties, vested in him by this part, the Secretary may--
>
> . . .
>
> (2) *sue and be sued in any court of record of a State having general jurisdiction or in any district court of the United States*, and such district courts shall have jurisdiction of civil actions arising under this part without regard to the amount in controversy, and action instituted under this subsection by or against the Secretary shall survive notwithstanding any change in the person occupying the office of Secretary or any vacancy in that office; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Secretary or property under the Secretary's

> control and nothing herein shall be construed to except litigation arising out of activities under this part from the application of sections 509, 517, 547, and 2679 of Title 28 . . . .

20 U.S.C. § 1082 (a), (a)(2) (2012) (emphasis added). Given that Congress explicitly conferred concurrent jurisdiction in the two instances above, both contained in the HEA, it is reasonable to conclude that, in the absence of such language in § 1099b (f), Congress intended § 1099b (f) to confer exclusive jurisdiction on the federal courts.

Those cases closest to the one before us involve the interpretation of the Resource Conservation and Recovery Act ("RCRA"), which states: "Any action … shall be brought in the district court for the district in which the alleged violation occurred or the alleged endangerment may occur." 42 U.S.C. § 6972 (a) (2012). The Sixth Circuit held that "the term 'shall' as it is used in the statute does not affirmatively divest the state courts of their presumptive jurisdiction." *Davis v. Sun Oil Co.*, 148 F.3d 606, 612 (6th Cir. 1998) (per curiam), *cert. denied*, 525 U.S. 1018 (1998). However, the Third and Eighth Circuits disagreed, finding that "shall be brought is most naturally read as a mandate" and thus confers exclusive jurisdiction on federal courts. *Litgo N.J. Inc. v. Commissioner New Jersey Dep't of Envtl. Prot.*, 725 F.3d 369, 395 (3rd Cir. 2013) (internal quotation marks omitted);

*accord, Blue Legs v. United States Bureau of Indian Affairs*, 867 F.2d 1094, 1098 (8th Cir. 1989). The HEA provision is even more emphatic, overriding "any other provision of law." We would follow the reasoning of the Third and Eighth Circuits were we required to decide this appeal solely on the "explicit statutory directive alone." But we are not confined to that analysis, but may in addition examine the legislative history of the statute, to which we now turn.[5]

## B.

The jurisdictional provision that we are called upon to interpret was contained in a lengthy 1992 enactment that included a number of amendments to the Higher Education Act of 1965. The 1992 Amendments bill—titled "Higher Education Amendments of 1992"—was first passed by the United States Senate on February 21, 1992. 138 CONG. REC. D133-02 (daily ed. Feb. 21, 1992) ("Senate

---

[5] UDC in its reply brief argued that "JRCERT offers no legislative history of the HEA to establish that the jurisdictional grant to federal courts is exclusive, nor does JRECERT [sic] argue that a clear incompatibility exists between state court jurisdiction and federal interests . . . [.] Thus, JRCERT has waived any argument under these two inquiries of *Gulf Offshore Co.*" We disagree. A party's conduct, whether by consent or waiver, cannot confer subject-matter jurisdiction upon a court. *See Chase v. Public Defender Serv.*, 956 A.2d 67, 75 (D.C. 2008) ("Parties cannot waive subject matter jurisdiction by their conduct or confer it . . . by consent, and the absence of such jurisdiction can be raised at any time."). Accordingly, these arguments are not waived.

passed S. 1150, to reauthorize the Higher Education Act of 1965 . . . .").  This version of the Higher Education Amendments of 1992 contained the relevant jurisdictional provision that stated, "shall be brought in the appropriate United States district court."  S. REP. NO. 102-204, at 361 (1991).  About a month later, on March 26, 1992, the United States House of Representatives passed a different version of the Higher Education Amendments of 1992, which varied in a number of respects from the Senate version.  Among other things, it contained no provision equivalent to the Senate's jurisdictional provision.  138 CONG. REC. D344-01 (daily ed. Mar. 26, 1992) ("House passed H.R. 3553, to amend and extend the Higher Education Act of 1965."); *see* H.R. REP. NO. 102-447 (1992) (no reference to relevant jurisdictional provision).

Given that the U.S. Senate and the U.S. House of Representatives passed non-identical bills, a conference committee was convened to resolve the various differences.  The House Conference Report, produced by the conference committee, set forth this resolution of the jurisdictional discrepancy:  "The Senate bill, but not the House bill, requires all civil action by institutions of higher education against accreditation agencies be brought in federal court.  The House recedes."  H.R. REP. NO. 102-630, at 524-25 (1992) (Conf. Rep.).  Both chambers passed identical versions of the bill, as negotiated by the conference committee,

which contained the Senate bill's jurisdictional language. 138 CONG. REC. D863-03 (daily ed. July 8, 1992) ("the House agreed to the conference report on S. 1150, to reauthorize the Higher Education Act of 1965-clearing the measure for the President."); 138 CONG. REC. D818-02 (daily ed. June 30, 1992) ("Senate agreed to the conference report on S. 1150, to reauthorize the Higher Education Act of 1965.").

The understanding of the conference committee set forth in the House Report is unequivocal. The provision requires "*all* civil actions" of the described type to be brought "in *federal* court." While certain types of legislative history may be of lesser weight, statements in committee reports, reconciling differences in versions passed by the two chambers and producing a bill that is later adopted by both chambers, can persuasively convey the intent of Congress. *Chandler v. Roudebush*, 425 U.S. 840, 857-58 (1976) ("Since the . . . provisions of the Senate bill were eventually adopted by the conference committee and passed by Congress, the legislative history of that bill is the most helpful on the issue presented here."); *Simpson v. United States*, 435 U.S. 6, 17 (1978) (Rehnquist, J., dissenting) ("The report of a joint conference committee of both Houses of Congress, for example, or the report of a Senate or a House committee, is accorded a good deal more weight

than the remarks even of the sponsor of a particular portion of a bill on the floor of the chamber.").

The statement in the House Committee Report demonstrates that Congress, in opting for the relevant jurisdictional provision as introduced in the Senate, unmistakably intended to confer exclusive federal jurisdiction over an institution of higher education's civil action against an accreditation agency.  It thus powerfully confirms our interpretation of the statutory language itself.

It is not surprising that, to our knowledge, every federal circuit court of appeals panel that has addressed, even in passing, whether the HEA confers exclusive jurisdiction on the federal courts has stated that the HEA does in fact confer exclusive jurisdiction on the federal courts.  *See, e.g.*, *Thomas M. Cooley Law Sch. v. American Bar Ass'n*, 459 F.3d 705, 712 (6th Cir. 2006) ("Federal courts have exclusive jurisdiction over any action brought by a school challenging an accreditation decision made by an organization approved by the Secretary (such as the ABA)."); *Foundation for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 528 (6th Cir. 2001) ("In 1992, Congress provided that federal courts have exclusive jurisdiction over suits brought by schools challenging accreditation decisions made by certain organizations approved by the

Secretary of Education."); *Chicago Sch. of Automatic Transmissions, Inc. v. Accreditation Alliance of Career Sch. & Colls.*, 44 F.3d 447, 449 (7th Cir. 1994) ("Congress provided for exclusive federal jurisdiction of any suit by a school or college protesting the denial or withdrawal of accreditation by an accrediting agency or association approved by the Secretary of Education.") (internal quotation marks omitted). To be sure, in these cases the question of concurrent state jurisdiction was not squarely presented. But these cases do demonstrate the conclusion that would be readily drawn from a reading of the statutory provision, which we have examined at greater length here.

## III.

Even if the jurisdictional provision in general is exclusive, UDC argues that it does not apply to the particular action here, which is not an original action but a third-party claim filed as part of a larger action by an institution that no longer is seeking accreditation. It relies on three separate arguments to support this position.

First, UDC notes that at the time of the third-party claim, it was neither accredited nor seeking accreditation from JRCERT. It relies on what it terms a literal reading of § 1099b (f), which states, in part, "any civil action brought by an

institution of higher education *seeking accreditation from, or accredited by*, an accrediting agency or association . . . and involving the denial, withdrawal, or termination of accreditation of the institution of higher education, shall be brought in the appropriate United States district court" (emphasis added). But "acccredited by" can fairly be read as including both currently and formerly accredited institutions of higher education, and such a reading is far more consistent with the apparent purpose of the provision. The text of § 1099b (f) references "involving the . . . withdrawal . . . of accreditation" which indicates that the statute contemplated formerly accredited institutions of higher education as falling within its purview. The intent to encompass all disputes about accreditation within the federal courts, including the withdrawal of accreditation, would seem oddly served by excluding from its provisions a group highly likely to be adversely affected by adverse action of the accrediting institution. Any lingering ambiguity is resolved by reviewing the legislative history of the 1992 Amendments to the HEA discussed above, which stated that Congress intended to "require[] *all civil action by institutions of higher education* against accreditation agencies be brought in federal court." H.R. CONF. REP. NO. 102-630, at 524-25 (emphasis added).[6]

---

[6] UDC argues that this interpretation of the statute will render superfluous the statute's language that the civil action "involv[es] the denial, withdrawal, or termination of accreditation . . . ." 20 U.S.C. § 1099b (f). We find this argument unpersuasive. UDC is still free to bring claims in state court that do not stem from

(continued…)

Second, UDC argues that a third-party claim is not a "civil action brought" by it.  The HEA does not define "any civil action" so we must turn to other sources for the answer to this question.  Black's Law Dictionary defines, in part, "action" as follows:

> 4.  A civil or criminal judicial proceeding.
>
> An action has been defined to be an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.  But in some sense this definition is equally applicable to special proceedings.  More accurately, it is defined to be any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree.  The action is said to terminate at judgment.

BLACK'S LAW DICTIONARY (10th ed. 2014) (quoting 1 MORRIS M. ESTEE, ESTEE'S PLEADINGS, PRACTICE, AND FORMS § 3, at 1 (Carter P. Pomeroy ed., 3rd ed. 1885)).

---

 (…continued)
the denial, withdrawal, or termination of its accreditation which could arise in any number of circumstances where an institution of higher education has a relationship with an accreditation agency outside of its accreditation authority.  For example, if an accreditation agency made a defamatory statement about an institution of higher education, wholly unrelated to the institution's accreditation, the institution could likely pursue a cause of action in state court.  While these civil actions may occur less frequently than civil actions relating to an institution's accreditation, our interpretation of § 1099b (f) would not render this language superfluous.

UDC's third-party claim, if successful, would entitle UDC to both damages and equitable relief which would constitute "redress or prevention of a wrong." The third-party claim, moreover, can stand as an action in its own right, as demonstrated by this very case where the prime action has been settled and dismissed and only UDC's third-party claim remains.[7] Indeed, the claim against the third party is commenced by serving a complaint and summons against the third party in the same manner as if it were an original proceeding. Super. Ct. Civ. R. 14. It is difficult to see why a distinction should be made between an original action and a third-party claim for purposes of exclusive jurisdiction if Congress intended, as it appears it did, to bring all complaints involving accreditation brought by an institution against the accrediting agency into federal courts.[8]

---

[7] Although the Notice of Appeal was not filed until over six months after the trial court dismissed UDC's third-party complaint, the dismissal was not appealable as a final order until plaintiff Fella's underlying complaint was resolved on May 29, 2014. *See* Super. Ct. Civ. R. 54 (b).

[8] UDC also makes much of the fact that its complaint involves purely state-court causes of action. We fail to see the significance of this fact where the statute covers all actions "involving" the withdrawal of accreditation, which UDC's causes of action most certainly do. In seeking a rationale for distinguishing between direct complaints and third-party complaints, UDC suggests that the latter should be excluded on grounds of "judicial efficiency" in having all aspects of pending litigation tried in a single action. We fail to see why that consideration should override a clear congressional intent that litigation "involving" accreditation should be confined to federal courts. Moreover, if true judicial efficiency were sought, third-party complaints should be mandatory, not optional. *See* 6 CHARLES

(continued…)

Finally, UDC argues that since third parties have no right to remove a case to federal court on diversity grounds, it would be equally inappropriate to dismiss a third-party complaint due to a federal jurisdiction argument. In fact, courts appear to be split regarding whether a third-party defendant can remove a case or part of a case to federal court,[9] but in any event, we are not persuaded that any assumed inability to remove the case to federal court can confer subject-matter jurisdiction upon our court system. UDC bases its argument on the so-called well-pled complaint rule, whereby the federal court only looks to the complaint to ascertain whether the federal court can properly exercise either federal-question or diversity jurisdiction over the complaint. If the plaintiff chose not to plead a cause of action that would allow the federal court to exercise jurisdiction over the complaint, the federal court must grant the motion to remand to state court. *See* 14C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER & JOAN E. STEINMAN, FEDERAL PRACTICE AND PROCEDURE §§ 3730-39 (4th ed. 2009). The policy behind

---

(…continued)
ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1446 & n.1 (3rd ed. 2010).

[9] *Lewis v. Windsor Door Co., a Div. of Ceco Corp.*, 926 F.2d 729, 733 (8th Cir. 1991) (discussing federal circuit court of appeals split regarding when a third-party defendant can remove a case to federal court); *Monmouth-Ocean Collection Serv., Inc. v. Klor*, 46 F. Supp. 2d 385, 389 (D.N.J. 1999) (discussing cases that permit and do not permit removal by a third-party defendant).

this doctrine is that the plaintiff is the "master of the complaint" and, absent an applicable exception, can choose to litigate in state court. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987). We fail to see how this principle is applicable when nothing stands in the way of UDC filing its complaint directly in federal court. Other courts have simply dismissed the third-party complaint for lack of subject-matter jurisdiction given that the third-party complaint should have been originally filed in federal court. *See, e.g.*, *Monmouth-Ocean Collection Serv., Inc.*, *supra* note 9, 46 F. Supp. 2d at 393 ("Rather than allow third-party removal in that situation, the proper procedure . . . would be for the third-party defendant to move to dismiss in state court."); *see Lewis*, *supra* note 9, 926 F.2d at 730 n.2 (state court lacked jurisdiction). To hold otherwise would allow this court to hear claims that Congress exclusively conferred on federal courts, and thus defeat the purpose of exclusive jurisdiction.

* * * * *

In sum, we conclude that the trial court properly ruled that the HEA applied here where UDC, an institution of higher education, initiated a third-party complaint, a type of civil action, against JRCERT, an accreditation agency. Its dismissal of the third-party complaint is therefore

*Affirmed.*